Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7864 | **DATE** | 12/13/2001 |
| **CASE TITLE** | DEBRA C. TEAL vs. CHICAGO SUN-TIMES, INC | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion And Order. Defendant's motion for summary judgment [13-1] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | DEC 1 4 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 26 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | 01 DEC 13 PM 5: 44 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| DEBRA C. TEAL, | ) |
| | ) |
| Plaintiff, | ) Case No. 00 C 7864 |
| | ) |
| v. | ) The Honorable John W. Darrah |
| | ) |
| CHICAGO SUN-TIMES, INC., | ) |
| | ) |
| Defendant. | ) |

DEC 1 4 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Debra C. Teal ("Teal") filed a complaint alleging that Defendant Chicago Sun-Times ("the Sun-Times") violated Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. § 2000(e) *et seq.*, by discharging her after she complained of sexual harassment. The Sun-Times moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, claiming that Teal cannot establish a *prima facie* case of retaliation or prove that its reason for her discharge is a pretext for retaliation.

For the reasons that follow, Chicago Sun-Times' Motion for Summary Judgment [13] is granted.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses



. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate through specific evidence that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1")[1] and exhibits are as follows.

---

[1] Plaintiff has objected to some paragraphs of the Defendant's Rule 56.1 statement on the basis that they rely on hearsay testimony. These objections neither admit nor deny Defendant's statements. The statements are not offered for the truth of the matter asserted but to establish the Defendant's state of mind in its decision to terminate Plaintiff. *Scherer v. Rockwell Int'l Corp.*, 975 F.2d 356, 358 n.2 (7th Cir. 1992) (holding reports of sexual harassment by other employees are admissible to show a decision-maker's state of mind or good faith belief for terminating plaintiff's employment). Therefore, the statements are admissible to show Defendant's state of

The Sun-Times publishes a daily tabloid newspaper with a circulation of approximately 488,000 newspapers daily and 427,000 on Sunday. (Def.'s 56.1 ¶ 3.) The Sun-Times employs approximately 1,200 individuals at its corporate headquarters, located in Chicago, Illinois. (Def.'s 56.1 ¶ 4.) The Sun-Times has a Non-Discrimination and Anti-Harassment Policy, which is posted on various bulletin boards throughout the company, including in the lunch room, human resources department, other departments such as the advertising department, and some bathrooms. (Def.'s 56.1 ¶ 5.) In October 1998, the Sun-Times redistributed its anti-harassment policy to its employees. (Def.'s 56.1 ¶ 4.) Teal received a copy of the policy. (Def.'s 56.1 ¶ 6.)

The anti-harassment policy states, "If you have complaints or personal knowledge of sexual or discriminatory harassment, you should immediately report such conduct to your supervisor. If this is not appropriate, report such conduct to the Vice President or Senior Vice President of your department or Senior Vice President of Human Resources." (Def.'s 56.1 ¶ 6.) The policy also states that it is the Sun-Times' policy that "no adverse actions shall be taken against any employee for resisting or reporting sexual or discriminatory harassment." (Def.'s 56.1 ¶ 6.) The policy prohibits "[u]sing any sexual, racial, ethnic, religious, or other discriminatory epithets to or about another employee." (Davidson Decl. Ex. A at 1.) The policy describes sexually harassing conduct as "repeated offensive sexual jokes, language, epithets . . . graphic verbal commentary about an individual's body, sexual prowess or preference . . .sexually degrading or vulgar words to describe

---

mind. All 56.1 responses which fall into this category shall be deemed admissible.
    Plaintiff's Additional Statement of Undisputed Facts Pursuant to Local Rule 56.1(a)(3) refers solely to Plaintiff's Affidavit. Defendant has pointed out some discrepancies between Plaintiff's deposition testimony and her affidavit. Plaintiff has offered no explanation for the discrepancies. Thus, the paragraphs of Plaintiff's statement of facts that contradict her deposition testimony will be disregarded.

an individual . . . and displays in the workplace of sexually suggestive objects or pictures."

The Sun-Times hired Teal as a Senior Administrative Assistant in the Advertising Department on March 10, 1997. (Def.'s 56.1 ¶ 7.) Two times a week, Teal ate lunch in the Sun-Times' cafeteria with co-workers, including Advertising Administrator, Trina Cieply, Sales Representative, Kathy Burke and Administrative Assistant, Janice Roberts. (Def.'s 56.1 ¶ 8.) During these lunches, sexual issues, sex, and "female things" were often discussed. (Def.'s 56.1 ¶ 9.) Teal and Burke discussed Burke's lesbian relationship with a woman named Minnie. (Def.'s 56.1 ¶ 17.) They also discussed a couple of men Burke was dating. (Def.'s 56.1 ¶ 17.) According to Burke, Teal always steered lunch conversation to sex or sexual topics. (Def.'s 56.1 ¶ 33.) On one occasion, while at work, Teal gave Burke a coffee mug with a handle shaped like a penis. (Def.'s 56.1 ¶¶ 9, 18.) On another occasion, Teal brought a T-shirt to work that depicted devils engaged in sexual activity. (Def.'s 56.1 ¶ 9.)

In February of 1999, a new employee, Collection Analyst, Chris Green, joined Teal's lunch group. (Def.'s 56.1 ¶ 10.) Teal began to make comments about Green's sexual orientation. (Def.'s 56.1 ¶ 10.) For example, Teal commented that Green looked and dressed like a man, that she (Green) had a "masculine or dikish appearance" and that Green might be gay. (Def.'s 56.1 ¶ 10.)

In late February 1999, Green complained to Human Resources Administrator Jeanie Smyers that Teal was harassing her. (Def.'s 56.1 ¶ 11.) Green told Smyers that Teal made comments about Green's sexuality, asked other employees if Green was homosexual and talked about Green's sexual orientation in front of other employees. (Def.'s 56.1 ¶ 11.) Pursuant to the Sun-Times' anti-harassment policy, Smyers and Safety Manager, Sandy Wojtynek, immediately began an investigation by speaking with Teal and other witnesses. (Def.'s 56.1 ¶ 11.) Teal admitted that she

-4-

commented on Green's sexual orientation and that she made the statements mentioned above about Green. (Def.'s 56.1 ¶ 12.) Other witnesses confirmed that Teal made comments about Green's sexual orientation. (Def.'s 56.1 ¶ 13.)

Smyers and Wojtynek met with Teal and discussed appropriate and inappropriate conduct in the workplace. (Def.'s 56.1 ¶ 14.) Teal admitted that her comments were inappropriate and that she violated the Sun-Times' anti-harassment policy. (Def.'s 56.1 ¶ 14.) They warned Teal that she needed to be sensitive and careful about her comments at work about other employees, that this type of conduct could not continue, and that her employment could be in jeopardy if she engaged in any other inappropriate behavior. (Def.'s 56.1 ¶ 14.)

On September 17, 1998, September 23, 1998, and October 28, 1998, Kathy Burke forwarded to Teal three voicemail messages that Burke's female partner left for her while performing sex acts. (Def.'s 56.1 ¶ 15.) Teal saved these messages on her Sun-Times' voicemail until she was terminated by the Sun-Times and recorded them on a tape recorder from her voicemail while at home. (Def.'s 56.1 ¶ 16.) Teal did not ask Burke to stop sending the messages nor did she report the messages to her supervisor. (Def.'s 56.1 ¶ 16.) Teal did not mention the messages when she was questioned by Human Resources about Chris Green's complaint. After receiving the messages, Teal continued to have lunch with Burke and talk with her in the halls. (Def.'s 56.1 ¶ 18.) Burke's husband also helped Teal with a financial problem. (Def.'s 56.1 ¶ 18.)

In June 1999, Teal told her supervisor, Terri McCreary, about the voicemail messages. (Def.'s 56.1 ¶ 19.) McCreary suggested that Teal speak with Human Resources and the Vice President of Advertising, Larry Green. (Def.'s 56.1 ¶ 19.) After meeting with Teal, Larry Green called Ted Rilea, Vice President of Human Resources. (Def.'s 56.1 ¶ 19.) Rilea told Teal that

Human Resources would investigate her complaint. (Def.'s 56.1 ¶ 19.)

The Sun-Times hired an outside human resources consultant, Deborah Terry of the Nash Group, to conduct an independent investigation. (Def.'s 56.1 ¶ 20.) On June 30, 1999, Terry interviewed Teal and other witnesses, including Chris Green, Kathy Burke, Cynthia Newsome, Joanie Harris, and Janice Roberts, about Teal's complaint about the sexually explicit voicemail messages. (Def.'s 56.1 ¶ 20.)

In her interview with Terry, Teal said that she found the messages "disturbing". (Def.'s 56.1 ¶ 21.) Teal also spoke to Terry about Chris Green's complaint against her. (Def.'s 56.1 ¶ 22.) Teal told Terry that she believed that she had been singled out during that investigation because Teal, Janice Roberts, Kathy Burke and Trina Cieply all made comments about Green's sexual orientation. (Def.'s 56.1 ¶ 22.)

Terry then spoke with Burke, who admitted sending Teal the messages. (Def.'s 56.1 ¶ 23.) Burke told Terry that she and Teal would talk about how funny the messages were and that Teal said she listened to the messages at home and masturbated. (Def.'s 56.1 ¶ 23.) Burke also told Terry that Teal: (1) said she had phone sex with a city worker she was seeing and that he sent Teal sexually charged voicemail messages, (2) had forwarded one such message to Burke, (3) said she would tease the city worker sexually over the phone, (4) said she had fantasies about using a whip and handcuffs and wanted to be called "Mistress Debra," (5) gave Burke a coffee mug with a handle shaped like a penis, and (6) wore a t-shirt to work that depicted sexual activity. (Def.'s 56.1 ¶ 24.)

Cynthia Newsome, a receptionist at the Sun-Times, told Terry that she had once worn a low-cut blouse to work, and Teal had commented that it was a "Chris Green" shirt and that Green would "eat or lick her up one side and down the other." (Def.'s 56.1 ¶ 25.) Trina Cieply told Terry that she

heard the blouse comment and told Teal to stop it. (Def.'s 56.1 ¶ 25.)

Janice Roberts told Terry that she also heard Teal's comment about Newsome's blouse. (Def.'s 56.1 ¶ 26.) Roberts also said that Teal forwarded to her a vulgar message Teal had received from a city worker. (Def.'s 56.1 ¶ 26.) Chris Green, Roberts, and Cieply all told Terry that Teal made inappropriate sexual comments at work. (Def.'s 56.1 ¶ 27.)

At the conclusion of her investigation, Terry drafted a report that recommended that Burke and Teal be terminated for violation of the Sun-Times' anti-harassment policy. (Def.'s 56.1 ¶ 28.)

The Sun-Times then conducted its own investigation through in-house counsel, Pamela Davidson. (Def.'s 56.1 ¶ 29.) After speaking with Terry and reviewing Terry's report, Davidson interviewed Green, Roberts, Cieply, Newsome, Burke, and Teal, as well as some additional witnesses between August 24, 1999 and September 14, 1999. (Def.'s 56.1 ¶ 29.)

Davidson questioned Teal about the voicemail messages she received from Burke. (Def.'s 56.1 ¶ 30.) Teal mentioned Chris Green's complaint of harassment against her. (Def.'s 56.1 ¶ 31.) Teal told Davidson that she felt she had been singled out because other employees made similar comments about Green. (Def.'s 56.1 ¶ 31.) Teal admitted to Davidson that she made the comments of which Green complained. (Def.'s 56.1 ¶ 31.)

In her interview with Davidson, Burke admitted that she sent the messages to Teal but stated that she had done so because Teal told her Teal was fascinated with her lesbian relationship. (Def.'s 56.1 ¶ 32.) Burke told Davidson that Teal had requested more graphic messages after receiving the first one. (Def.'s 56.1 ¶ 32.) Burke also told Davidson that Teal said that she masturbated while listening to the messages at home. (Def.'s 56.1 ¶ 32.) According to Burke, she and Teal laughed about the messages, remained close friends, and continued to interact at work. (Def.'s 56.1 ¶ 32.)

Burke told Davidson that, after receiving Burke's forward messages, Teal forwarded messages to her that Teal had received from a city worker. (Def.'s 56.1 ¶ 33.) Teal encouraged Burke and others to call him and tease him sexually. (Def.'s 56.1 ¶ 33.)

Davidson also interviewed Cieply, who told her that Teal told Cieply, in a joking manner, about a message Burke sent Teal. (Def.'s 56.1 ¶ 34.) Cieply told Davidson that she believed Burke sent Teal the messages because the two shared intimate details of their personal lives with each other. (Def.'s 56.1 ¶ 34.) Cieply also stated that Teal was preoccupied with Green's and other employees' sexuality. (Def.'s 56.1 ¶ 34.) According to Cieply, when Newsome was hired, Teal asked whether Newsome had been hired "for Kathy". (Def.'s 56.1 ¶ 35.) Teal tried to set up Green and Burke. (Def.'s 56.1 ¶ 35.)

In her interview with Davidson, Roberts reported that she did not know anything about the voicemails Burke forwarded to Teal. (Def.'s 56.1 ¶ 36.) Roberts told Davidson that conversation always turned to sexually related topics when Teal was present. (Def.'s 56.1 ¶ 36.) According to Roberts, Teal instigated all lunch discussions about Green's sexuality. (Def.'s 56.1 ¶ 36.)

At the close of her investigation, Davidson concluded that Teal violated the Sun-Times' anti-harassment policy by (1) willingly participating in the exchange of sexually explicit voicemail messages between herself and Burke, (2) forwarding her own sexually graphic voicemail messages to other employees, and (3) her repeated comments about sexual matters and other employees' sexual orientation. (Def.'s 56.1 ¶¶ 37, 38.) Davidson also concluded that Burke violated the anti-harassment policy by (1) sending sexually explicit voicemail messages to a co-worker and (2) participating in the sexually explicit banter during lunch. (Def.'s 56.1 ¶ 39.)

Davidson included these conclusions in her report to Larry Green and Ted Rilea. (Def.'s 56.1

-8-

¶ 37.) In her report, Davidson also recommended that the Sun-Times terminate Teal and Burke for violating the anti-harassment policy. (Def.'s 56.1 ¶¶ 38, 39.) On September 14, 2000, the Sun-Times discharged Teal for violating the anti-harassment policy. (Def.'s 56.1 ¶ 40.) Teal was never told that she was discharged in retaliation for complaining about the messages or sexual harassment. (Def.'s 56.1 ¶ 40.)

Teal has stated that she believes that she was really retaliated against because she is black. (Def.'s 56.1 ¶ 41.) Teal cannot explain why she believes that she was terminated because she is black. (Def.'s 56.1 ¶ 41.) However, her charge of discrimination does not allege retaliation based on race. (Def.'s 56.1 ¶ 41.)

Teal testified that a white sales assistant named Alisa complained that a manager made a pass at her. (Def.'s 56.1 ¶ 42.) Teal believes that Alisa was promoted after being in her position for less than six months. (Def.'s 56.1 ¶ 42.) Teal understands that one must be employed for a year before being promoted or moved. (Def.'s 56.1 ¶ 42.) Teal does not know, personally, whether Alisa was promoted because someone made a pass at her and does not have any idea of Alisa's job performance or if she is a good worker. (Def.'s 56.1 ¶ 42.)

Prior to the time of her termination, Teal made copies of three confidential documents that did not pertain to her. (Def.'s 56.1 ¶ 43.) The first document Teal removed from Terri McCreary's office was McCreary's acknowledgment form confirming her receipt of the Sun-Times' Manager/Supervisory Manual. (Def.'s 56.1 ¶ 44.) Teal made an unauthorized copy of the document for herself when she made an authorized copy of the document for McCreary. (Def.'s 56.1 ¶ 44.) Teal did not tell anyone she had made a copy. (Def.'s 56.1 ¶ 44.)

Teal also copied two confidential letters McCreary sent to Ted Rilea regarding a complaint

McCreary had about another employee. (Def.'s 56.1 ¶ 45.) These documents were stored on McCreary's computer. (Def.'s 56.1 ¶ 45.) Teal did not tell anyone at the Sun-Times that she was copying these letters, and she did not ask for permission to copy them. (Def.'s 56.1 ¶ 45.)

It is the policy of the Sun-Times to terminate any employee who steals company property. (Def.'s 56.1 ¶ 46.) Had Davidson known that Teal secretly copied and retained three confidential documents that did not pertain or belong to her, she would have terminated Teal's employment. (Def.'s 56.1 ¶ 46.) The Sun-Times has terminated at least nine individuals for theft of company property.

## DISCUSSION

Defendant the Sun-Times moves for summary judgment on Plaintiff Teal's claim that the Sun-Times violated Title VII by discharging her in retaliation for complaining about sexual harassment. The Sun-Times argues that summary judgment is proper because: (1) Teal cannot establish a causal connection between her complaint of harassment and her termination; and (2) even if Teal could establish a *prima facie* case of retaliation, she cannot show that the Sun-Times' reason for her termination was a pretext for retaliation.

Title VII prohibits discrimination against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Plaintiff has offered no direct evidence of retaliation. A retaliation claim may be proved by indirect evidence under the burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001). In order to

prove a *prima facie* case of retaliation under the ADA, Teal must show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse employment action. *Kersting*, 250 F.3d at 1117.

Teal has established the first two elements of a *prima facie* case of retaliation: she engaged in statutorily protected expression when she complained of sexual harassment, and she suffered an adverse employment action when her employment with the Sun-Times was terminated. However, Teal cannot establish that there is a causal link between her complaint that she was being sexually harassed and her termination.

There must be a causal link between the disciplinary actions and the termination. *See Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998) (holding that "the employer's adverse action [must] follow[] fairly soon" after the employee's protected expression to establish the required nexus for retaliation in violation of Title VII). But while timing is "an important clue to causation . . . [it] does not eliminate the need to show causation." *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179 (7th Cir. 1998) (citation omitted). "In order to demonstrate the 'causal link,' [Teal] must demonstrate that [the Sun-Times] would not have taken the adverse action 'but for' the protected expression." *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996) (citing *Klein v. Trustees of Ind. Univ.*, 766 F.2d 275, 280 .

Teal cannot demonstrate that the Sun-Times would not have terminated her "but for" her complaint about sexual harassment. The Sun-Times states that it discharged Teal because she engaged in conduct that violated its anti-harassment policy. Teal argues that the anti-harassment policy "only prohibits sexual harassment, not discussions regarding sex by co-workers who consent

to such conversations." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 5.)

It is undisputed that the anti-harassment policy prohibited the very conduct that Teal admitted doing and that other employees disclosed. The anti-harassment policy specifically prohibited making comments about another employee's sexual orientation; repeated sexual jokes, language, or epithets; graphic verbal commentary about another employee's sexual preference; sexually degrading words used to describe another; and displaying sexually suggestive objects or pictures. There is no genuine issue of material fact as to whether Teal violated the anti-harassment policy.

Teal admitted that: (1) she often engaged in lunchtime conversations about sex; (2) she used a sexually degrading word to describe Chris Green's appearance, "dikish"; and (3) she displayed sexually suggestive objects or pictures by giving Burke a coffee mug with a handle shaped like a penis and wearing a T-shirt to work that depicted devils engaged in sexual activity.

Furthermore, other employees related to Davidson, in the course of the investigation, that Teal had engaged in other inappropriate conduct that violated the anti-harassment policy. According to the witnesses in Davidson's investigation, Teal forwarded sexually explicit voicemail messages that she had received to other employees, had phone sex at work, steered lunchtime conversation to sexual topics, and commented that another employee's blouse was a "Chris Green blouse" and that Green would "eat or lick [the employee] up one side and down the other."

Moreover, Teal has not presented any evidence of retaliation besides the timing of her discharge. Teal has not presented any evidence that would suggest that her discharge was connected to her complaint of sexual harassment rather than her violations of the Sun-Times' anti-harassment policy. Furthermore, the fact that other employees, Chris Green and Alisa, made complaints of sexual harassment and were not terminated undermines Teal's assertion that her termination was in

retaliation for her complaint. Therefore, Teal cannot demonstrate that there is a causal link between her discharge and her complaint of sexual harassment.

Even assuming Teal could establish a *prima facie* case of retaliation, she could not succeed on summary judgment because of her failure to show that the Sun-Times' legitimate articulated reason for terminating her employment (that she violated the anti-harassment policy) was pretextual. "A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence." *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998). An honest belief in the non-discriminatory reason offered by the decision-maker will be sufficient even if the reasons are foolish, trivial, or baseless. *Debs*, 153 F.3d at 396.

As stated earlier, the Sun-Times maintains that it terminated Teal because she violated the anti-harassment policy. Teal does not dispute that she engaged in the conduct that Davidson and Terry, the outside consultant, determined violated the anti-harassment policy. Teal argues that the Sun-Times' reason for her termination is pretextual because there is no evidence that "Teal had engaged in any prohibited conduct subsequent to the [Chris Green] investigation in February 1999." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 7.) However, Teal readily admits that she engaged in "sexual banter and joking with co-employees" after the Chris Green investigation. (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 7.) As discussed earlier, this conduct clearly violates the Sun-Times' anti-harassment policy. Teal has not presented any evidence that shows that the Sun-Times did not honestly believe its reason for terminating her. The other employee involved in the exchange of salacious voicemails, Kathy Burke, was also discharged. (Chicago Sun-Times' Mem. Law Supp. Mot. Summ. J. at 9.)

Teal also argues that the statements by the witnesses in Terry's and Davidson's reports are hearsay and should not be allowed in this motion for summary judgment. However, in determining whether the Sun-Times' reason for discharging Teal is pretextual, the proper inquiry is not whether Teal actually did or said the things the witnesses charge her with but whether the Sun-Times honestly believed that she did. *Roberts v. Separators, Inc.*, 172 F.3d 448, 452 (7th Cir. 1999). Therefore, these statements are admissible to show the state of mind of the responsible employees of the Sun-Times.

Teal has not presented any evidence that the Sun-Times did not reasonably believe that she said and did the things that the witnesses said she did. Teal has also not presented any evidence that suggests that the Sun-Times was unreasonable in its reliance on these statements. Furthermore, Teal admits some of the conduct that the witnesses accuse her of: the comments about Chris Green's sexual orientation, displaying the T-shirt depicting devils engaged in sexual activity at work, giving Burke a mug with a handle shaped like a penis, and engaging in sexual banter at lunchtime. This type of conduct was specifically prohibited by the anti-harassment policy.

Thus, Teal has offered no evidence from which a rational jury could conclude that the Sun-Times did not honestly believe its proffered reason for terminating her employment. The Sun-Times' termination of Teal represented a reasonable business decision based on Teal's violation of the anti-harassment policy. Courts "do not sit as a super-personnel department that reexamines an entity's business decisions." *Wolf v. Buss (America), Inc.*, 77 F.3d 914, 920 (7th Cir. 1996).

Since the Court is granting the Sun-Times summary judgment on Teal's substantive retaliation claim, the Court need not reach the issue of whether the Sun-Times is entitled to summary judgment on the scope of her remedies.

## **CONCLUSION**

For the reasons stated herein, the Chicago Sun-Times' Motion for Summary Judgment [13] is granted.

**IT IS SO ORDERED.**

_____
John W. Darrah, Judge
United States District Court

Date: December 13, 2001